UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KYLE ARVAY,

    Plaintiff,                           Case No:

v.

HCA INC., C/HCA INC., HCA HEALTH
SERVICES OF FL, INC. all d/b/a REGIONAL
MEDICAL CENTER BAYONET POINT,

    Defendants.
_____/

## COMPLAINT & JURY DEMAND

Plaintiff, KYLE ARVAY, sues the above captioned Defendants, HCA INC.; C/HCA INC., HCA HEALTH SVC OF FL INC., all doing business as MEDICAL CENTER BAYONET POINT (hereinafter "Defendants" or "MCBP"), for discriminatory employment practices in violation of the Americans With Disabilities Act 42 U.S.C. § 12101, et. seq., and the Florida Civil Rights Act F.S. 760.01- 760.11 et. seq., and in support thereof, states as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, because Plaintiff's claim involves a federal question under 42 USC Section 12101 et. seq.

2. This Court has supplemental Jurisdiction of the State law claims FEHA claims under 28 U.S.C. § 1367 asserted herein as they arise out of a common nucleus of operative facts and involve the same questions of fact and law as the Federal Question presented by the ADA claims.

3. This Court has personal jurisdiction over this action because Defendants at all times materially operating continuous business activities from a fixed place of business within this District, and thus within the State of Florida, doing business as a hospital within this District, and subject to § 48.193. Additionally, the damages at issue occurred in this district.

4. Venue is proper to this Court pursuant to 28 U.S.C. 1391(b) because the acts complained of herein took place in Pasco County at Defendants' place of business: Regional Medical Center, Bayonet Point.

## THE PARTIES

5. Defendant, HCA INC. is for profit foreign corporation with principal place of business at One Park Plaza, Nashville, Tennessee 37203. At all times material hereto, Defendant HCA INC. owned, operated and did business as Regional Medical Center Bayonet Point in this district. Defendant may be served through its designated registered agent: CT Corporate System, 1200 S. Pine Island Road, Plantation, FL 33342.

6. Defendant, C/HCA INC. is for profit foreign corporation with principal place of business at One Park Plaza, Nashville, Tennessee 37203. At all times material hereto, Defendant C/HCA INC. owned, operated and did business as Regional Medical Center Bayonet Point in this district. Defendant may be served through its designated registered agent: CT Corporate System, 1200 S. Pine Island Road, Plantation, FL 33342.

7. Defendant, HCA HEALTH SERVICES OF FLORIDA INC. is a Florida for profit corporation with principal place of business at One Park Plaza, Nashville, Tennessee 37203. At all times material hereto, Defendant HCA HEALTH SERVICES OF FLORIDA INC. owned, operated and did business as Regional Medical Center Bayonet Point in this district. Defendant may be served, through its designated registered agent: CT Corporate System, 1200 S. Pine Island Road, Plantation, FL 33342.

8. Upon information and belief, Defendants C/HCA INC. AND HCA HEALTH SERVICES OF FLORIDA INC., are wholly owned subsidiaries of Defendant HCA Inc.

9. Defendant HCA INC. operates as a business enterprise, sharing officers, physical corporate offices, and employees of its wholly owned subsidiaries and co-defendants herein, such that it is liable for the acts and actions of its subsidiaries and should be treated as a single party for purposes of this litigation, and

jointly and severally liable for the acts complained of herein under Enterprise Liability theory.

10. Defendants individually and collectively are an "employer" with greater than 15 employees and subject to the Americans With Disabilities Act of 1990 as an employer; and individually and collectively an "employer" subject to the Florida Civil Rights Act, F.S. 760.01-760.11.

11. At all times relevant to this action, Plaintiff was an employee of Defendants, performing work at their facility, Regional Medical Center, Bayonet Point located at 14000 Fivay Rd, Hudson, FL 34667.

12. This Court has supplemental jurisdiction over the state law claims of F.S. 760.01- 760.11 (the Florida Civil Rights Act) and pursuant to 28 U.S.C. §1367. The state law claims are so related to the ADA federal claim and also arise out of the same common nucleus of operative facts such that they form part of the same case or controversy.

## GENERAL ALLEGATIONS

13. Plaintiff was employed with Defendants working in the pharmacy department on or about April 4, 2013 as a pharmacy technician ("tech").

14. Plaintiff was last employed as a Pharmacy Technician, and was employed with Defendants since 2013.

15. Plaintiff has Autistic Spectrum Disorder (ASD), which is well known to be legally recognized as a disability under the ADA definitions, and as a handicap, under the Florida Civil Rights Act.

16. Defendants were aware of Plaintiff's disability and handicap.

17. Plaintiff required accommodations for his disability/handicap.

18. Throughout Plaintiffs' employment, because of his disability/handicap, Defendant's managers and superiors, the Pharmacy Director Kriston Bottrell and Deborah Bueling treated him differently than his peers.

19. Just prior to his termination of employment, Plaintiff's Pharmacy Manager, Tony, disregarded the modifications provided by refusing to permit Plaintiff to leave despite the fact that his job duties for the day were completed.

20. These same individuals also demonstrated a bias and dislike for Plaintiff also manifested as favoritism towards other employees.

21. These same individuals engaged in harassing actions towards Plaintiff.

22. Plaintiff complained and reported to Human Resources that he was being discriminated against, treated differently, singled out, harassed and oppressed due to what he perceived was because of his disability and handicap.

23. As a result of the harassment, oppression and discriminatory actions of Defendant, Plaintiff suffered increased anxiety which affected his ability to function in the workplace.

24. Plaintiff sought out additional medical treatment and was advised to reduce his work hours and seek such as an accommodation for his disabilities/handicap.

25. Defendants told Plaintiff that as long as work was done, he could leave early for the workday.

26. Plaintiff notified his superiors and Defendant that his condition manifests into anxiety and causes him to be unable to perform his work duties.

27. As a means to get the Claimant to resign, and for motivations due to their dislike against Plaintiff because of his disability/handicap, Plaintiff's superiors would act aggressive toward him and provoke him in hopes of causing him anxiety and as a concerted act to aggravate and inflame his Autism or Autistic Spectrum Condition.

28. After Plaintiff reported what he perceived to be harassment and aggressive conduct due to his disability/handicap, Bueling and Defendants increased the harassment.

29. Defendants were motivated to single Plaintiff out and target him for disciplinary action and termination of employment because of his disability/handicap.

30. Defendants target Plaintiff in retaliation for his complaints of disability/handicap discrimination and harassment, and thereafter sought to

discipline him and terminate his employment in retaliation for his complaints to the company and HR.

31. Beginning in October 2019, Plaintiff presented his need for reduction of his work hours to 2 days per week because of his disability/handicap.

32. Defendant stated it did not need or require proof of the accommodation.

33. Instead of granting this requested accommodation or engaging the Plaintiff in the required interactive process, Defendant communicated to Plaintiff that their alternative response was that Plaintiff could just leave work for the day as soon as his work duties were completed.

34. However, Plaintiff was still forced by Defendants to work more days than he was able when the schedule allegedly was lacking coverage due to other employees not being available.

35. Defendants did not require Plaintiff to seek out permission or approval to leave for the day, and thereafter he left when his job duties were completed.

36. On July 8, 2020, Plaintiff completed his job duties for the day.

37. The Pharmacist Tony, however, warned that Plaintiff was not to leave for the day, even though Plaintiff had completed his job duties for the day.

38. Plaintiff and the Pharmacist then got into a disagreement over Plaintiff's notification that he was leaving for the day.

39. The Pharmacist, Tony, who was by his position a superior to Plaintiff, took Plaintiffs leaving for the day as some unauthorized conduct or misconduct.

40. Tony stood in the doorway and physically tried to prevent Plaintiff from leaving as well as attempted to chase Plaintiff down the hallway; both actions caused Plaintiff severe distress, anxiety, and aggravated his ASD.

41. Plaintiff was then formally written up and disciplined for this incident including suffering termination of his employment for leaving work despite prior authorization and approval from Defendants to do the very same thing.

42. Plaintiff was terminated as an employee of Defendants on July 9, 2020.

43. Plaintiff then commenced the filing of an EEOC charge; he was provided a notice of rights to sue on April 2, 2021, and thus has satisfied all necessary actions or conditions precedent to commence with the filing of this lawsuit.

## COUNT I
## DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101, et seq
## AMERICANS WITH DISABILITIES ACT OF 1990

44. The Plaintiff readopts and re-alleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein, and further alleges:

45. Defendants engaged in harassing and oppressive conduct towards the plaintiff after he placed them on notice of his disability/handicap.

46. Plaintiff's condition is triggered or aggravated by certain aggressive conduct and communications, which manifests in the form of anxiety.

47. Defendants knowingly and with malicious intentions, harassed Plaintiff, treated him in an overly aggressive manner in hopes that he would resign or act in a manner that its employees and plaintiffs' superiors could write him up and discipline him as a means to justify terminating his employment.

48. Defendants treated Plaintiff differently than his peers because of his disability/handicap.

49. After Plaintiff complained to HR about being treated in a manner he perceived to be discriminatory and harassing because of his disability/handicap, Defendants retaliated further.

50. Defendants wrote up Plaintiff for alleged misconduct on July 9, 2020, and under false pretenses.

51. Defendant was motivated to find justification and some excuse to terminate Plaintiff's employment because of his disabilities/handicap or because Defendants perceived Plaintiff as disabled/handicapped.

52. The write up was a mere pretext for unlawful discriminatory actions and conduct, as Defendants primary intentions and motivations were to target Plaintiff for termination and find a means to justify terminating his employment because of his disability and handicap.

53. Alternatively, Defendants retaliated against Plaintiff for his complaints of disability/handicap discrimination and harassment.

54. Defendants' actions alleged justification for terminating Plaintiff's employment from this single incident were not based upon legitimate business reasons but were instead a pretext for unlawful discrimination as Defendants used Plaintiffs disability/handicap as a reason to terminate his employment.

55. Further, Defendants held Plaintiff to a different and higher standard of conduct than his peers and co-workers and placed under heightened scrutiny of his performance than his peers and co-workers.

56. Defendants' superior Bueling, was incensed and angered by Plaintiff's complaint to HR about the harassment and discriminatory conduct and bullying and sought to terminate his employment.

57. Defendants' termination of Plaintiff is also inconsistent and in conflict with their own employee manual and disciplinary guide.

58. Defendants have willfully and intentionally discriminated against Plaintiff in violation of the ADA and the Florida Civil Right Act.

59. Defendants' conduct was and is willful, wanton and intended to inflict financial and emotional harm upon Plaintiff.

60. As a result of Defendants' unlawful, discriminatory conduct, Plaintiff has suffered economic and non-economic harm, including pain and suffering, humiliation, and loss of income.

## COUNT II
## DISRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. 760.01-760.11

61. Plaintiff adopts and realleges paragraphs 1-43 as if fully set forth herein.

62. Defendants engaged in harassing and oppressive conduct towards Plaintiff after he placed them on notice of his disability/handicap.

63. Plaintiff's condition is triggered or aggravated by certain aggressive conduct and communications, which manifests in the form of anxiety.

64. Defendants knowingly and with malicious intentions, harassed Plaintiff, treated him in an overly aggressive manner in hopes that he would resign or act in a manner that its employees and plaintiffs' superiors could write him up and discipline him as a means to justify terminating his employment.

65. Defendants treated Plaintiff differently than his peers because of his disability/handicap, including placing a higher level of scrutiny of his job performance and holding his employment subject to a different level of standards of conduct and disciplinary actions.

66. After Plaintiff complained to HR about being treated in a manner he perceived to be discriminatory and harassing because of his disability/handicap, Defendants retaliated further.

67. Defendants wrote up Plaintiff for alleged misconduct on July 9, 2020, and under false pretenses.

68. Defendants were motivated to find justification to terminate Plaintiff's employment because of his disabilities/handicap or because Defendants perceived Plaintiff as disabled or handicapped.

69. The write up was a mere pretext for unlawful discriminatory actions and conduct, as Defendants primary intentions and motivations were to target Plaintiff for termination and find a means to justify terminating his employment because of his disability and handicap.

70. Alternatively, Defendants retaliated against Plaintiff for his complaints of disability/handicap discrimination and harassment.

71. Defendants' asserted reasons for terminating Plaintiffs were not based upon legitimate business reasons; Defendants held Plaintiff to a different and higher standard of scrutiny than his peers and co-workers because of his disability/handicap.

72. Defendants' superior Bueling, was incensed and angered by Plaintiff's complaint to HR about the harassment and discriminatory conduct and bullying and sought to terminate his employment.

73. Defendants' termination of Plaintiff is also inconsistent and in conflict with their own employee manual and disciplinary guide.

74. Defendants have willfully and intentionally discriminated against Plaintiff in violation of the ADA and the Florida Civil Right Act.

75. Defendants' conduct was and is willful, wanton and intended to inflict financial and emotional harm upon Plaintiff.

76. As a result of Defendants' unlawful, discriminatory conduct, Plaintiff has suffered economic and non-economic harm, including pain and suffering, humiliation, and loss of income.

## COUNT III
## UNLAWFUL RETALIATION IN VIOLATION OF THE 42 U.S.C. § 12101, et seq AMERICANS WITH DISABILITIES ACT OF 1990

77. The Plaintiff readopts and re-alleges the allegations set forth in paragraphs through 43 as if fully set forth herein, and further alleges:

78. Defendants engaged in harassing and oppressive conduct towards the plaintiff after he placed them on notice of his disability/handicap.

79. Plaintiff's condition is triggered or aggravated by certain aggressive conduct and communications, which manifests in the form of anxiety.

80. Defendants knowingly and with malicious intentions, harassed Plaintiff, treated him in an overly aggressive manner in hopes that he would resign or act in a manner that its employees and plaintiffs' superiors could write him up and discipline him as a means to justify terminating his employment.

81. Defendants treated Plaintiff differently than his peers because of his disability/handicap, and subjected him to a higher standard of conduct and level of scrutiny.

82. After Plaintiff complained to HR about being treated in a manner he perceived to be discriminatory and harassing because of his disability/handicap, Defendants retaliated further.

83. Defendants wrote up Plaintiff for alleged misconduct on July 9, 2020, and under false pretenses.

84. Defendants were motivated to find justification to terminate Plaintiff's employment because of his disabilities or because Defendant perceived Plaintiff as disabled.

85. The write up was a mere pretext for unlawful discriminatory actions and conduct, as Defendants primary intentions and motivations were to target Plaintiff for termination and find a means to justify terminating his employment because of his disability and handicap.

86. Alternatively, Defendants retaliated against Plaintiff for his complaints of disability/handicap discrimination and harassment.

87. Defendants' asserted reason for termination of Plaintiff's employment was improper and unjustified, as Plaintiff was held to a different and higher standard of scrutiny and level of conduct than his peers and co-workers.

88. Defendants' superior Bueling, was incensed and angered by Plaintiff's complaint to HR about the harassment and discriminatory conduct and bullying and sought to terminate his employment.

89. Defendants' termination of Plaintiff's employment is also inconsistent and in conflict with their own employee manual and disciplinary guide.

90. Defendants have willfully and intentionally discriminated against Plaintiff in violation of the ADA and the Florida Civil Right Act.

91. Defendants' conduct was and is willful, wanton and intended to inflict financial and emotional harm upon Plaintiff.

92. As a result of Defendants' unlawful, discriminatory conduct, Plaintiff has suffered economic and non-economic harm, including pain and suffering, humiliation, and loss of income.

## COUNT IV
## UNLAWFUL RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT, F.S. 760.01-760.11

93. The Plaintiff readopts and re-alleges the allegations set forth in paragraphs 1 through 43 as if fully set forth herein, and further alleges:

94. Defendants engaged in harassing and oppressive conduct towards Plaintiff after he placed them on notice of his disability/handicap.

95. Plaintiff's condition is triggered or aggravated by certain aggressive conduct and communications, which manifests in the form of anxiety.

96. Defendants knowingly and with malicious intentions, harassed Plaintiff, treated him in an overly aggressive manner in hopes that he would resign or act in a manner that its employees and plaintiffs' superiors could write him up and discipline him as a means to justify terminating his employment.

97. Defendants treated Plaintiff differently than his peers because of his disability/handicap.

98. After Plaintiff complained to HR about being treated in a manner he perceived to be discriminatory and harassing because of his disability/handicap, Defendants retaliated further.

99. Defendants wrote up Plaintiff for alleged misconduct on July 9, 2020, and under false pretenses.

100. Defendants were motivated to find justification to terminate Plaintiff's employment because of his disabilities or handicap or because Defendants perceived Plaintiff as disabled or handicapped.

101. The write up was a mere pretext for unlawful discriminatory actions and conduct, as Defendants primary intentions and motivations were to target Plaintiff for termination and find a means to justify terminating his employment because of his disability or handicap.

102. Alternatively, Defendants retaliated against Plaintiff for his complaints of disability/handicap discrimination and harassment.

103. Defendants' alleged reason for terminating Plaintiff was improper and unjustified as he was placed under a higher amount of scrutiny and held to a different and higher level of conduct than his peers and co-workers.

104. Defendants' superior Bueling, was incensed and angered by Plaintiff's complaint to HR about the harassment and discriminatory conduct and bullying and sought to terminate his employment.

105. Defendants' termination of Plaintiff is also inconsistent and in conflict with their own employee manual and disciplinary guide.

106. Defendants have willfully and intentionally discriminated against Plaintiff in violation of the ADA and the Florida Civil Right Act.

107. Defendants' conduct was and is willful, wanton and intended to inflict financial and emotional harm upon Plaintiff.

108. As a result of Defendants' unlawful, discriminatory conduct, Plaintiff has suffered economic and non-economic harm, including pain and suffering, humiliation, and loss of income.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for:

a. A ruling that Defendants have discriminated against Plaintiff in violation of the ADA and Florida's Civil Right Act;

b. A ruling that Defendants have unlawfully retaliated against Plaintiff in violation of the ADA and Florida's Civil Rights Act;

c. A ruling that Defendants' actions were willful, malicious and intentional;

d. Award Plaintiff all compensatory damages available at law including: back pay; and in lieu of reinstatement, front pay, damages for all pain and suffering, harm to reputation, mental anguish, humiliation and embarrassment.

e. Award Prejudgment interest on all damages awarded;

f. A ruling that Defendants acted willfully, maliciously and with reckless disregard for Plaintiffs' rights and award Punitive damages;

g. An order or judgment awarding reasonable attorneys' fees and costs and expenses of this litigation;

h. Award Plaintiff attorney's fees and costs and expenses of litigation pursuant to the ADA and Florida Civil Rights Act;

i. That the Court award any other legal and equitable relief as this Court may deem fair, just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact and legal claims raised by this Complaint.

Dated this 14th day of June 2021.

*/s/ Mitchell L. Feldman, Esq.*
MITCHELL L. FELDMAN, ESQ.
Feldman Legal Group
Fl Bar No.: 0080349
6916 West Linebaugh Avenue, Suite 101
Tampa, FL 33625
Tele: (877) 946-8293 - Fax: (813) 639-9376
EM: mfeldman@flandgatrialattorneys.com
Secondary: mail@feldmanlegal.us
*Attorney for Plaintiff*